UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUZANA BARKHOSIR,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | No. 1:20-cv-01058-BAK-GSA<br><br>**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST COMMISSIONER OF SOCIAL SECURITY**<br><br>**(Doc. 20)** |

### I. Introduction

Plaintiff Suzana Barkhosir ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI, respectively, of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 20, 23. After reviewing the record the Court finds that substantial evidence and applicable law do not support the ALJ's decision. Plaintiff's appeal is therefore granted.

### II. Factual and Procedural Background[2]

On June 9, 2018 and August 16, 2019, respectively, Plaintiff applied for disability insurance benefits and supplemental security income alleging disability as of July 4. 2012. AR 221. The Commissioner denied the applications initially on September 18, 2018 and on reconsideration on January 7, 2019. Plaintiff requested a hearing which was held before an Administrative Law Judge

---

[1] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 8 and 9. The action was originally referred to Magistrate Judge Jennifer L. Thurston. Upon her elevation to the position of U.S. District Judge, the action was referred to the undersigned.

[2] The Court has reviewed the administrative record including the medical, opinion and testimonial evidence, about which the parties are well informed. Relevant portions thereof will be referenced in the course of the analysis below when relevant to the arguments raised by the parties.

(the "ALJ") on October 22, 2019. AR 39–64. On November 13, 2019 the ALJ issued a decision denying Plaintiff's application. AR 22–43. The Appeals Council denied review on June 22, 2020. AR 1–7. On July 31, 2020 Plaintiff filed a complaint in this Court. Doc. 1.

### III.     The Disability Standard

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted).

When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and quotations omitted). If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).

> To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.
>
> 42 U.S.C. §1382c(a)(3)(B).

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

**IV.    The ALJ's Decision**

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. AR 20. The ALJ noted that the claimant worked as a caretaker for her mother in 2018 and, though her earnings did not meet the threshold for substantial gainful activity, the work activity she performed undermined her allegations of disability. AR 28. At step two the ALJ found that Plaintiff had the following severe impairments: cervical and lumbar spine degenerative disc disease, depression, and post-traumatic stress disorder. AR 28. The ALJ also determined at step two that Plaintiff had the following non-severe impairments: hypertension, hyperlipidemia, plantar fasciitis, bilateral trigger thumbs, and gastroesophageal reflux disease. AR 29. The ALJ determined that Plaintiff's fibromyalgia and related diffuse arthralgia were not medically determinable impairments. AR 29. At step three the ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 30–31.

Prior to step four, the ALJ evaluated Plaintiff's residual functional capacity (RFC) and

concluded that Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b) with occasional performance of postural activities, a limitation to noncomplex and routine tasks, and occasional face-to-face interaction with the public, supervisors and co-workers. AR 32–36.

At step four the ALJ concluded that, considering her RFC, Plaintiff could not perform her past relevant work as a home attendant. AR 36. At step five, in reliance on the VE's testimony, the ALJ concluded that Plaintiff could perform other jobs existing in significant numbers in the national economy at the light exertional level, namely: garment sorter, routing clerk, and copy messenger. AR 37. Accordingly, the ALJ concluded that Plaintiff was not disabled at any time since her alleged onset date of July 4, 2012. AR 38.

## V. Issues Presented

Plaintiff asserts three claims of error: 1) that the ALJ and Appeal's Council improperly rejected the medical opinions; 2) that the ALJ improperly discounted her subjective symptom complaints; and 3) that the ALJ's step-five finding is not supported by substantial evidence because the hypotheticals posed to the VE did not include all the limitations supported by the medical opinions and by her testimony (an argument which need not be separately addressed as it is predicated on the success of the first two and identifies no independent basis for remand).

### A. The Medical Opinions

#### 1. Applicable Law

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record

such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins,* 466 F.3d at 883. *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed on or after March 27, 2017, the new regulations eliminate a hierarchy of medical opinions, and provide that "[w]e will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, when evaluating any medical opinion, the regulations provide that the ALJ will consider the factors of supportability, consistency, treatment relationship, specialization, and other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors and the agency will articulate how the factors of supportability and consistency are considered. *Id.*

### 2. Dr. Chandler's Opinion

At the outset it is worth addressing the parties' fairly extensive debate as to the impact of the regulatory changes on the "treating physician rule." As Plaintiff reads the prevailing law, the March 27, 2017 regulatory changes should not be read to displace the pre-existing treating physician rule and associated requirements of specific and legitimate reasoning for rejecting a contradicted medical opinion, and clear and convincing reasoning for rejecting an uncontradicted medical opinion. Defendant disagrees.

This topic received undue attention from the parties at the expense of thoroughly covering the factual issues at stake. The distinction between the old and new standards is perhaps more

useful in theory than in practice. Suffice it to say that supportability and consistency are factors that the ALJ must specifically discuss under the regulatory changes when evaluating medical opinion evidence, and the lack of supportability and consistency would certainly be specific and legitimate reasons to reject an opinion based on caselaw pre-dating the regulatory changes. *See, e.g.*, *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995) (noting that inconsistency with independent clinical findings in the record is a specific and legitimate reason to reject a contradicted opinion of a treating physician).

Although any notion of medical opinion hierarchy has been eliminated, even under the old standard opinion hierarchy was always subordinate to considerations of supportability and consistency with independent clinical findings and the overall evidence. Where an ALJ's rationale for rejecting a contradicted treating physician's opinion satisfies the new regulatory standard, it would almost certainly pass scrutiny under the old standard as well.[3] Here, the ALJ did not properly consider the required regulatory factors of supportability and consistency when evaluating Dr. Chandler's opinion.

On September 6, 2018, Dr. Chandler conducted a consultative psychiatric examination of the Plaintiff at the request of the agency. AR 547–50. Dr. Chandler diagnosed post-traumatic stress disorder with panic attacks, and major depressive disorder with anxious distress. AR 549. The results of her mental status examination included some normal findings: adequate hygiene, cooperative attitude, normal motor activity, good eye contact, normal speech, full orientation, intact intelligence, adequate fund of knowledge, simple abstraction, concrete ability to interpret proverbs, intact ability to perform calculations, linear thought process, logical thought content, and no

---

[3] To the extent the old standard can be read as more demanding of the ALJ and more deferential to the treating physician than the current standard, that deference is no longer applicable. Courts in this circuit have rejected the notion that the treating physician rule still pertains for claims filed after March 27, 2017. *Kathy Jean T. v. Saul*, No. 20CV1090-RBB, 2021 WL 2156179, at *5 (S.D. Cal. May 27, 2021) (Although prior case law required an ALJ to provide "clear and convincing" or "specific and legitimate" reasons for discounting a treating or examining opinion, this "measure of deference to a treating physician is no longer applicable under the 2017 revised regulations.").

suicidal ideation. AR 548–49. Plaintiff also displayed some abnormalities: poor attention, poor concentration, poor memory, compromised insight and judgment, moderately dysphoric mood, and restricted affect. AR 549. Under a heading labeled "cognitive functioning and work-related abilities," Dr. Chandler opined as follows:

> The claimant had moderate to marked difficulty maintaining attention and concentration for the duration of the evaluation. The claimant had moderate difficulty enduring the stress of the interview. The claimant had mild difficulty interacting appropriately with this examiner. Based upon observations of current behavior and reported psychiatric history and in less structured settings, the claimant's ability to interact with the public, supervisors, and coworkers appears to be moderately impaired.

AR 550.

The ALJ offered the following discussion of the opinion:

> This opinion is supported by explanation based on the one-time interview. While I agree that the claimant has some limitations attributed to mental health symptoms, these limitations are out of proportion and not consistent with the overall evidence of record such as the claimant's mental status examination findings of logical thought process, normal thought content, and fair judgment and insight (Exhibits B10F/3; B12F/3, 6, 8). Therefore, I do not find this opinion persuasive.

AR 35. Plaintiff contends that the ALJ erred in taking the normal findings from the opinion out of context and ignoring the abnormal findings which supported the opinion. The Court agrees.

The ALJ found the opinion inconsistent with the "overall evidence of record." Yet, as it relates to claimant's mental health, the "overall evidence" cited by the ALJ was essentially limited to the following: 1) two mental examinations; 2) two non-examining opinions,[4]; and 3) Dr. Chandler's lone examining opinion, which the ALJ rejected. Thus, the supportability and consistency analysis required by the regulations essentially begins and ends with a review of the two mental status examinations, exhibits 10F and 12F. The ALJ cited Exhibit 10F at 3, which was

---

[4] Non-examining opinions can constitute substantial evidence "when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Thus, the analysis must always begin with those independent clinical findings and other evidence. The non-examining opinions can only serve to buttress the same; they do not stand on their own.

page 3 of Dr. Chandler's own examination. The ALJ cited findings of logical thought process, normal thought content and fair judgment. The ALJ did not acknowledge other abnormal findings on the following page, namely poor attention and poor concentration. AR 549. Those findings do not undermine the alleged limitations in maintaining concentration and attention. The ALJ also cited exhibit 12F at pages 3, 6 and 8, similarly noting normal thought process, content and judgment. AR 556, 559, 561. Page 7 of the same examination noted fair attention but poor concentration, AR 560. Thus, neither exhibits 10F nor 12F undermine Dr. Chandler's opinion regarding moderate to marked limitations in attention and concentration.

The ALJ did provide some additional discussion of note at step three in performing the special technique for evaluating mental impairments in which the ALJ found that Plaintiff did not meet the paragraph B criteria for listings 12.04 or 12.12 because she did not have one extreme or two marked limitations in any category. Specifically of note, the ALJ found moderate limitations in concentration, persistence and pace (as opposed to the *moderate to marked* limitations identified by Dr. Chandler).

In so concluding, the ALJ cited Dr. Chandler's examination and noted that Plaintiff could recite five digits forward and three digits in reverse, could spell the word "world" forward, but could not spell it in reverse. This would arguably justify a conclusion that Plaintiff was only moderately, not markedly, limited as to attention and concentration. However, the ALJ did not reference these examination results subsequently when discussing and rejecting Dr. Chandler's opinion. Although a Court may draw inferences from an ALJ's opinion if they are to be drawn, the Court cannot draw the inference here without the ALJ bridging the analytical gap, because the logic is not self-evident. The fact that Plaintiff could spell the word "world" forward but not in reverse does not self-evidently signify only moderate concentration limitations, as opposed to moderate to marked. Dr. Chandler (ostensibly the expert on such matters) did describe the examination results

as indicative of "poor" concentration. AR 549 ("Concentration: Poor. Claimant was able to spell "World" forward, but she was unable to spell it in reverse.").

Moreover, Dr. Chandler's opinion had broader applicability than Plaintiff's performance of those isolated tasks, noting that Plaintiff "had moderate to marked difficulty maintaining attention and concentration *for the duration of the evaluation*." AR 550 (emphasis added). In short, in reaching her opinion, Dr. Chandler was presumably aware of the results of the mental status examination she herself performed (including Plaintiff's ability to recite digits and spell "world"), yet still reached her opinion. For the Court to find Dr. Chandler's opinion unsupported by her own examination results, the ALJ ought to explicitly make that finding in the first instance and offer some explanation.

Finally, Defendant contends "the ALJ found that the opinion lacked support *because* it was based on a 'one-time interview . . . .'" Resp. at 8, Doc. 23 (emphasis added). Defendant mischaracterizes the ALJ's decision which, as quoted above, noted that "This opinion is supported by explanation *based on* the one-time interview." AR 35 (emphasis added). The ALJ did not reference the one-time nature of the examination pejoratively; it was a passing reference.

To the extent Defendant nevertheless believes the one-time nature of the examination was a legitimate basis to reject Dr. Chandler's opinion, Defendant's argument is not well taken. Although the nature and extent of the examining or treating relationship is a relevant factor to consider under the regulations when evaluating opinion evidence (20 C.F.R. § 404.1520c(c)), it is not an independently sufficient fact to rely upon, and it has effectively no persuasive value in this case. Dr. Chandler's opinion was the only psychiatric examining opinion of record. Moreover, Dr. Chandler was a consultative examiner performing the examination at the agency's request. It seems incongruous for the agency to request a one-time consultative examination to aid in the disability determination and, in the event the examiner opines in Plaintiff's favor, to then criticize the

examiner's opinion because it was based "only on a one-time examination."

In sum, the ALJ rejected Dr. Chandler's opinion as "not consistent with the overall evidence of record such as the claimant's mental status examination findings . . .". The ALJ cited only two mental status examinations of record: one performed by Dr. Chandler and another performed by Plaintiff's treating provider. The former noted poor attention and poor concentration; the latter noted fair attention and poor concentration. AR 549. Neither examination undermined Dr. Chandler's opinion as to moderate to marked limitations in attention and concentration, thus the ALJ's rejection of the same was error.

### 3. Dr. De Paz's Opinion

On March 11, 2020 Plaintiff's treating physician, Dr. De Paz, completed an opinion regarding Plaintiff's physical limitations. Dr. De Paz identified diagnoses of cervicalgia and bilateral carpal tunnel syndrome. AR 8. As to symptoms and signs, he identified MRI showing cervical facet changes at C5-C6. He opined Plaintiff could lift less than 10 pounds, could sit/stand/walk for about 2 hours in an 8-hour day, could sit and stand 20 consecutive minutes, needed to walk 5 minutes every 90 minutes, would need the opportunity to shift positions at will, could occasionally climb stairs, could never perform other postural activities, could not reach, handle, finger, feel, push, pull, and needed to avoid all exposure to temperature extremes and hazards. AR 8–9.

The opinion postdated the ALJ's decision but was submitted to the Appeal's council who found it did not relate to the period on or before the ALJ's decision. The Social Security Act grants district courts jurisdiction to review only final decisions of the Commissioner. 42 U.S.C. § 405(g); *Klemm v. Astrue*, 543 F.3d 1139, 1144 (9th Cir. 2008). An Appeals Council denial of a request for review is a non-final agency action not subject to judicial review because when review is denied, the ALJ's decision becomes the final decision of the Commissioner. *Taylor v. Commissioner of*

*Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011).

No later than five business days before the date of the hearing, a claimant must submit all written evidence to the administrative law judge who will conduct the hearing in the claimant's case. 20 C.F.R. § 416.1435(a). The ALJ may also accept information after the five-day deadline prior to issuing the hearing decision under circumstances enumerated in 20 C.F.R. § 416.1435(b).

In limited circumstances, a claimant may submit new and material evidence to the Appeals Council that relates to the period on or before the ALJ's decision. *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1162 (9th Cir. 2012); 20 C.F.R. § 416.1470(a)(5). Evidence is material if it bears "directly and substantially on the matter in dispute," and there is a "reasonable possibility" that the new evidence would have changed the outcome. *Tudor v. Saul*, 484 F. Supp. 3d 717, 726 (N.D. Cal. 2020) (citing *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001)).

The first issue is whether Dr. De Paz's opinion bears directly and substantially on the matter in dispute, namely Plaintiff's functional capacity between the alleged onset date and the date of the ALJ's decision. The Appeal's Council noted that the opinion post-dated the ALJ's decision and therefore concluded that it "does not relate to the period at issue" and "does not affect the decision about whether you were disabled beginning on or before November 13, 2019." AR 2. For no apparent reason, the Appeal's Council foreclosed the possibility that a physician could retrospectively opine on a claimant's condition during a period of time earlier than the date of the opinion. In fact, that is precisely what the agency's pre-printed forms ask the physician to do, and is precisely what the physician did here. The Appeal's Council's formulaic, unexplained decision reveals an overtly mistaken view that new and material evidence must pre-date the ALJ's decision. That view conflicts with the agency's own regulations. The regulations provide that a claimant may submit new and material evidence to the appeals council that "*relates to the period* on or before the date of the hearing decision." 20 C.F.R. § 416.1470(a)(5).

Plaintiff argues somewhat imprecisely that "this evidence does relate to the period at issue, as Dr. De Paz specifically addressed the onset dates *for each of Plaintiff's impairments* and opined the neck impairment dated back to 1999 while the hand impairments dated back to 2015." Br. at 8, Doc. 20.  Defendant responds as follows:

> But such information on when Plaintiff's impairments began is meaningless because it says nothing about whether these impairments were disabling. What's more, it appears that the earliest treatment record from Dr. De Paz was from 2015 (see generally, Ex. 8F at AR 439-544).  There is no evidence that Dr. De Paz treated Plaintiff in 1999 to be able to render an opinion that Plaintiff's back impairment was disabling since 1999.

Resp. at 13, Doc. 23.

Defendant's argument is not well taken.  Although Plaintiff phrased her argument somewhat imprecisely, Dr. De Paz's opinion did not simply address the onset date of the "impairments." Indeed, the pre-printed questionnaire asks at question 12 for the physician to indicate "when (approximate date) did the patient's current diagnoses *cause any functional limitations.*"  AR 10 (emphasis added).  Dr. De Paz's responses should be viewed in light of the phrasing of the question, which asks about the onset date of the functional limitations, not the onset date of the impairments. AR 10.  Moreover, for the purposes of the inquiry at hand, it is not relevant that Dr. De Paz's records only dated back until 1999.  Defendant is correct that Dr. De Paz was in no position to opine on Plaintiff's condition as of 1999.  But he certainly was in a position to opine on Plaintiff's condition as of 2015, which he did, and which falls well within the relevant period.  Dr. De Paz's opinion bears directly and substantially on a matter at issue, namely Plaintiff's physical functionality during the relevant period between Plaintiff's alleged onset date of July 4, 2012 and the date of the ALJ's decision, November 13, 2019.

The remaining question is whether the opinion presents a reasonable possibility that the outcome would have changed had the opinion been considered.  *Tudor v. Saul*, 484 F. Supp. 3d

717, 726 (N.D. Cal. 2020).[5] Dr. De Paz did identify physical limitations far beyond what the ALJ included in the RFC, and the ALJ did not have access to that later-dated opinion. Nevertheless, as Defendant observes, the ALJ did have access to Dr. De Paz's underlying treatment records upon which his opinion was based, treatment records which did not support the opinion:

> For instance, the ALJ noted that Dr. De Paz's records showed that Plaintiff's gait was normal, range of motion was full, and straight leg raising test was negative (AR 462, 483, 508). Dr. De Paz's opinion that Plaintiff would be unable to use her hands for any handling or fingering is not supported by the doctor's own records, which show negative x-rays of both hands (AR 543-44). Dr. De Paz noted that there was no clubbing or ischemia in the fingertips (AR 462). Hand injections controlled Plaintiff's symptoms (AR 465). Two State agency medical consultants reviewed Plaintiff's records, including Dr. De Paz's records, and concluded that Plaintiff was capable of a range of light work without any manipulative limitations (AR 129-30)

The Court agrees with Defendant's analysis, to which Plaintiff did not respond in a reply brief. Although Dr. De Paz did identify numerous work-preclusive limitations, this does not necessarily mean that the opinion presents a reasonable possibility that the outcome would have been different had the ALJ considered it. To present that possibility, it must at least be reasonably possible that the ALJ would have accepted the opinion in light of the treatment records. There is no such reasonably possibility here.

As to Plaintiff's bilateral carpal tunnel, there is no objective evidence of such a condition. Dr. De Paz's opinion cited only a cervical MRI. There were records regarding bilateral trigger thumbs but, as the ALJ noted, the record reflected the condition was controlled by cortisone injections. Although Cervical X-rays and MRI did show facet arthropathy, spinal canal, and neuroforaminal narrowing at multiple levels (as cited by Dr. De Paz), there is no objective evidence of any associated upper extremity motor deficiency, sensory deficiency, nor any other evidence that would support Dr. De Paz's opinion that Plaintiff is incapable of any reaching, handling, fingering,

---

[5] The regulation's use of the term "reasonably *probability*" (20 C.F.R. § 416.1470), prevailing case law tends to use the term "possibility." In any case, Dr. De Paz's opinion does not meet the standard.

pushing, or pulling. Dr. De Paz's citation to MRI results, with no associated deficiencies upon clinical examination, is insufficient to support his opinion that Plaintiff essentially could not use her hands.

As to the identified limitations in sitting, standing, and walking, those limitations are unrelated to cervicalgia or carpal tunnel, the only two diagnoses identified by Dr. De Paz in support of his opinion. He did not purport to base his opinion on any lumbar pathology, lower extremity pathology, or related clinical findings. That is not to say that Plaintiff had no such pathology. Indeed, as the ALJ noted, Plaintiff's lumbar spine imaging noted loss of lordosis, moderate multi-level disc disease, moderate multilevel spondylosis, and facet arthrosis. AR 34. Lower extremity nerve conduction studies showed early or mild peripheral neuropathy. But the ALJ and the non-examining agency physicians reviewed these records and included no limitations nearly as extreme as those identified by Dr. De Paz. To present a reasonable possibility that Dr. De Paz's opinion would have changed the outcome, at a minimum the opinion would have had to draw some connection between the lumbar pathology and the alleged limitations, which the opinion did not do. The Appeal's Council appropriately rejected the opinion (though not for the right reasons).

### B. Plaintiff's Subjective Symptomology

#### 1. Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity. *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018). The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The RFC must consider all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

The ALJ is responsible for determining credibility,[6] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; Smolen, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); see also S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and any other

---

[6] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5.

### 2. **<u>Analysis</u>**

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 32. Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017).

Plaintiff testified in relevant part that she had difficulty using her hands in general, including tying shoes, writing, opening jars, had trouble lifting more than a few pounds, had trouble walking for more than 10 minutes at a time, had daily panic attacks, and side effects from her medications. AR 49–60. Although the testimony was equivocal in some respects, on balance, if credited as true the testimony would establish limitations beyond the ALJ's assessed RFC, such as a limitation to sedentary exertional work with substantial restriction on manipulative activities. At least the latter would likely be work preclusive per the VE's testimony but, in any event, all limitations supported by the record must be posed to the VE. AR 62–63.

Nevertheless, the ALJ's rejection of the testimony was supported by clear and convincing reasoning. Despite the familiar critique advanced by Plaintiff in her brief argument, the ALJ's reasoning was not overly generalized or difficult to parse. The ALJ found "The claimant's allegations of disability are not consistent with the claimant's medical evidence of record that document rather mild findings." AR 33. The ALJ then proceeded to describe those mild findings and, though the ALJ did not specifically pair each finding with the associated testimony she was rejecting, the connection is reasonably self-evident.

Cervical and lumbar imaging findings were remarkable for spinal canal and neuroforaminal narrowing at multiple levels, loss of lordosis, moderate multi-level disc disease, moderate multilevel spondylosis, and facet arthrosis. AR 33-34. Nevertheless, on examination her gate was

normal, her straight leg raise was negative, and her providers found no further use for narcotic pain medication as of 2016. AR 33. She subsequently had a flare up following a 2018 motor vehicle accident after which she exhibited reduced range of motion. It improved 80 percent following chiropractic care, and her pain improved with myofascial release therapy. AR 33. On examination she exhibited normal strength and sensation. *Id.*

Though the ALJ did not overtly connect the individual medical findings to the specific testimony they purportedly undermined, no published authority requires such a matching exercise and neither the parties, the ALJ, nor the undersigned necessarily have the medical expertise to do so comprehensively and accurately. Suffice it to say that common sense supports the conclusion that an individual who exhibits normal gate, strength, sensation and range of motion on examination would not have limitations as extreme as Plaintiff alleged, including inability to lift more than a few pounds and walk more than 10 minutes. Moreover, Plaintiff identifies nothing beyond testimonial evidence to support the extensive alleged limitations in hand use. X-rays of her hands were negative as noted by the ALJ, and the record is devoid of evidence of bilateral carpal tunnel other than the untimely opinion of her physician Dr. De Paz. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); S.S.R. 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ also identified Plaintiff's activities of daily living as a basis for rejecting her alleged limitations. Plaintiff demonstrated "resourcefulness in utilizing a gym for showering, a storage facility for her personal items, and laundromat for cleaning." "Resourcefulness" is not a work-related capacity at issue, though the tasks described by the ALJ do undermine the alleged limitations in hand use. The ALJ identified additional testimony including her ability to attend to

personal care, drive a car and do simple household chores. The ALJ also noted that Plaintiff worked as a caretaker for her mother during 2018, work which did not meet the earnings threshold for substantial gainful activity, but nevertheless undermined Plaintiff's allegations of disability.

On balance, the evidence the ALJ cited in rejecting Plaintiff's testimony may not have affirmatively supported the notion that Plaintiff could perform the work required by the RFC, but the evidence did reasonably establish that Plaintiff was not nearly as limited as alleged. *See Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in "gardening and community activities . . . evidence [which] did not suggest Valentine could return to his old job," but "did suggest that Valentine's later claims about the severity of his limitations were exaggerated.").

### VII.   Remand for Further Proceedings

The Appeal's Council appropriately rejected Dr. De Paz's opinion and the ALJ appropriately rejected Plaintiff's testimony. However, the ALJ did not appropriately address the consultative examining opinion of Dr. Chandler regarding moderate to marked limitations in maintaining attention and concentration given that the only two records the ALJ cited on point noted substantial deficiencies in both regards. Remand is appropriate for the ALJ to specifically consider the relevant examination findings cited above regarding poor attention and concentration, any other evidence on point, to reach a reasoned conclusion whether Dr. Chandler's identified limitations are therefore supported and, if so, to translate the same into concrete restrictions in a revised RFC as appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) ("Generally when a court . . . reverses an administrative determination, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.").

**VII.   Conclusion and Order**

For the reasons stated above, the Court finds that substantial evidence and applicable law do not support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is granted in part.  The Clerk of Court is directed to enter judgment in favor of Plaintiff Suzana Barkhosir, and against Defendant Kilolo Kijakazi, acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **March 11, 2022**                          **/s/ Gary S. Austin**
                                                           UNITED STATES MAGISTRATE JUDGE